for constantly disrupting store operations and colleagues and poor customer service. Look, we've read your stuff. We know what's in contention. So since our time is relatively limited for the number of issues, let's, Ms. Harris, go straight to one of the things that's challenging to me and that I'm gonna be interested to hear from the NLRB. And that is the thrive remedies that were applied here. Can you, as you point out in your cross-reply, the NLRB has taken the position that it doesn't matter whether damages are classified as legal or equitable. They've got the power to do whatever they think is right. To effectuate the ends of the National Labor Relations Act. Is that a new position from them? Does thrive or that legal position taken here represent a new position or not? We do think it represents a new position. And I think even the board seems to acknowledge as much in the thrive decision. And here's why. Not in the 90 years of the board's history has the board before categorically said that in any case where they're ordering reinstatement or some sort of back pay remedy or any other sort of remedy, they're going to order all direct or foreseeable losses that someone has suffered and have a separate. Losses. Is there a difference between losses and consequences of the termination of employment? Well, at least as the board has framed it, it appears to be all, they'd say pecuniary losses. That's their framing. But the reason I ask the question is you're wording that in a context which builds almost into an assumption of economic damages as opposed to equitable relief. And if you look at it, not as losses per se, but as consequences, that does not rule out in the same way the concept that this may be an equitable approach to getting, to satisfying the policies of the act. And the act as you know, says that the board is empowered to take such action, including reinstatement. And I know that's where you can focus on employees with or without back pay, as will effectuate the policies of the act. So shouldn't our focus be on whether or not what the board did was inconsistent with its authority to effectuate the policies of the act? Respectfully, we think the focus should be on the first clause of the phrase, which is affirmative action. Why only look at the first phrase and take out, other than the fact that it makes it harder for you to win, why should we ignore the second part of it? Well, because it's a, so it's affirmed, the board's authority is just full stop as such affirmative action, including reinstatement with or without back pay, as would effectuate the policies of the act. So it's only, you can only look at the policy of the act in a world where what the board is trying to do is affirmative action. And to respond to your previous question, why is this sort of consequential compensatory damage not equitable? We think that in cases like Merton's, the Supreme Court has, and that distinction applies here, because it runs throughout the sort of area of law. The distinction is, is the remedy trying to essentially claw back the defendant's unlawful gain, that's restitution, that's a type of monetary relief that is equitable, or is it classic compensatory relief where you're trying to compensate the plaintiff for their losses, not things in the defendant's possession. Yeah, but if we add to that what the court said in Jarczy, where we're focusing on the intent of the remedy, doesn't that undermine what you're saying in terms of whether we look at this through an equitable or a legal lens here? If the purpose is not to punish when you turn it, I don't think you're arguing that the award here was to punish Starbucks. But if it's to restore the status quo, clearly what they ordered was part of restoring the status quo. So our view is, I think, consistent with the Jarczy, which says the test, I mean, it says compensatory damages are the classic form of monetary relief. It's quoting Martins. When it's talking about penalties. Judge McKee's point, Jarczy seems to wrestle with this directly, Ms. Harris. Jarczy seems to say, here's the way you can tell compensatory consequential damages, whether something is classically within the Seventh Amendment or not. Because you've made a statutory and a constitutional argument against the application of this Thrive remedy, right? So just to be clear, it's a constitutional avoidance argument. We're not challenging the same, we are saying, though, that there are Seventh Amendment concerns. And the reason, on Jarczy's civil penalties issue is. Well, there wouldn't be constitutional avoidance concerns if you didn't think you had a constitutional argument, right? Yes, we are relying on the idea that, again, there are constitutional concerns with the board's interpretation, and so, therefore, there are constitutional issues about the Seventh Amendment. So you're making, you know, like a constitution, that's an interesting distinction to make, I get it. But what you're really saying is, if you step past this, or you let them step past this, you're in constitutional territory. So don't go there. So you're making a statutory argument, and it certainly feels like you're making a constitutional Seventh Amendment argument. But if, when the Supreme Court says in Jarczy, here's how you can tell whether you're in Seventh Amendment land. You're, if it's punitive, then that's the kind of civil remedy that is guarded by the Seventh Amendment. And when it's compensatory, it's not. Now, that, that, candidly, left me flummoxed. Can you get into that some? Because I really thought that the way we decided whether something was in the Seventh Amendment had to do not with what the intent of a party was, but with whether or not this was the kind of thing that was tried before the courts of Westminster, back in merry old England, et cetera, et cetera, at the time the Seventh Amendment was put in place. So deal with it, would you? So I think you're exactly right. I don't think Jarczy sort of supersedes what the court had said before. And with respect to civil penalties, the reason the court is making that distinction between restitution and sort of clawing back the defendant's gains versus punishment is because civil penalties are different from damages. They're not being usually awarded to a plaintiff. They're things that the government keeps. So there is sort of a very distinctive line of cases, like toll beforehand that the court relies on in Turkesey, about how do you tell if civil penalties specifically are equitable or monetary? Because sometimes you could have civil penalties where it's just clawing back what the defendant wrongfully took. And the line there. So are you saying that it doesn't, that Jarczy doesn't answer the question about legal versus equitable for us in this context? Yes, well it does in the sense that, so it does in the sense that it quotes Martins and says, so look, it says monetary damages are the classic quintessential form of legal relief that has a line in the opinion. And then it proceeds. And they say, it doesn't matter, right? As you pointed out in your brief, their position appears to be, and we don't care. We're the NLRB, and we've got the power under 10C to do what we think is right to effectuate the purposes of the act. Done. And it doesn't say anything about equitable. It doesn't say anything about legal. It just says we get to do what we think we need to do. Why are they wrong about that? Again, they're wrong about that for just basic statutory reasons in addition to the constitutional ones. And I would start with the Supreme Court's Russell decision in the text of the statute, which again says that affirmative action and cease and desist is sort of classic language that confines the board to equitable relief, that no one has understood the board as having the power to award compensatory damages before. And then in the Title VII context, it is extremely anomalous, the idea that the Supreme Court has held for sort of full stop and berk. Same language, doesn't allow compensatory damages. It's not the same language. There's language in 10C that's not in, what is it, 706G under the Title VII contract? I mean, it's close. And it's clear that one is modeled after the other, but the statutes are not worded identically. I'm sorry, Judge Markey. You're absolutely right on that, but I think the difference in wording actually hurts the NLRB here because some of the additional language in Title VII, so they share the language, such affirmative action including reinstatement with and without back pay, dot, dot, dot. That's what the statute says. And what does Thrive do that goes further than what the NLRB did prior to November of 22? Well, I think if you look at the board's order itself, it's saying all direct or foreseeable losses. So previously, there were a handful of cases that were sort of as-applied issues where they were ordering such things as interim search for work expenses or other examples. Again, we're not challenging those in this particular case. We think that on an as-applied basis, they may or may not fall within the category of equitable relief. Why aren't you? That's, I don't understand how you can get away with not doing that. If they were doing it here and there before, and you're not saying that's outside their power, then why is it outside their power to say, well, we're not going to do it here and there. We're just going to make a blanket order that says if there are such damages, people get them. Because again, this is a new category or rule of all direct or foreseeable consequences. I think you could reconcile some of the previous as-applied things. You could litigate post-Jerkesy in particular. Are these things actually consistent with equitable relief? Are they restitution-like? It would be on an as-applied basis where you could figure it out. But here, the award itself in this case says all direct or foreseeable damages, foreseeable losses will stop. That really is a sea change. That is a sort of very categorical award of damages. It triggers- The basis on the concept of make whole, make a person whole, and that's equitable in nature is what they're saying. And you're saying, in response to that, what? We're saying in response to that, that is absolutely not the way that you look at whether something is equitable or not. The question is, the test that the Supreme Court has applied time and again is, if you look at the nature of the relief, is it something that was quintessentially- Is there a relief or the purpose of the relief? I'm not, I think it's probably both, but it is sort of a, it is a historical inquiry. It is, is this the type of thing that courts of law had to handle or is it the type of thing that courts of equity had to handle? That's a very familiar statutory concept as well as a familiar Seventh Amendment concept. And- Why then, and you plowed this ground once before, but help me again, because I'm struggling with it. Why did the court go off in Jarchese and talk about punitive purpose? Because, again, for civil penalties, because that is a unique form of relief that you're paying to the government. So you don't have the traditional question in equity, which is, are you capturing the plaintiff's losses or are you taking money back from the defendant that the defendant wrongfully had, which is restitution? You don't even have that sort of transfer to the private party. So Jarchese, if I'm, tell me if I'm getting it right. Your position is, if you looked at Jarchese and read it as broadly as maybe some people are pressing, it would lead us to the mistaken understanding that what they said in the specific context of civil penalties imposed by a government agency is a dividing, is a test for what is equitable versus legal, what is Seventh Amendment land, more generally. Yes, and that would be implausible because the Supreme Court, you would have to think it's sub salientio, overturned a whole line of cases about compensatory damages. But you wouldn't be disposing of Merton and all these other cases. Right, all sorts of other cases, and it's particularly strange to think so for two reasons for the opinion. One is that the court leads off by citing Merton's for a general principle about legal versus monetary relief. And second of all, I mean, even Justice Sotomayor's dissent, which I think is a good, at least data point with respect to what the understanding of the court's holding is, seems to say there are Seventh Amendment concerns in her view, even with the Jones and Laughlin decision with respect to the status of ordering back pay and reinstatement under Jarchese's framework. Now, again, we're not quibbling with back pay and reinstatement at all, but I think that is a telling sign that if that's how far the dissent thinks that Jarchese is going, there are. How do we draw a distinction then? What's the, if they're allowed, if you concede they can do make whole relief, but then you say, but they can't do compensatory or consequential damages, what's the difference? Right, I think the dividing line is we're not saying like, I mean, I don't know how they think make whole is. It seems to include a lot of stuff, but back pay is traditionally something that is considered an incident of equity. And I'm sorry to keep interrupting, but we're on kind of limited time here. And I really, really, really want some help with this. What is the difference? Like, how do you draw a line? How does, other than saying it's back pay and nothing else, which is clearly wrong. Yeah. I think if you use that right, that's too limited. Sorry, we say back pay is an incident of equitable relief. And we absolutely acknowledge all sorts of other affirmative remedies that are equitable and can be allowed. Are you saying back pay is the only thing though? Or are you saying, because I thought you conceded earlier, they could do some other stuff and they'd be okay. They could award money besides back pay. And still have it fit in the bucket of equitable relief. So I'm sorry, we are not in this case, like making an as-applied challenge for those other things, but we aren't, like candidly aren't sure, especially post-Jorchese, what the status of those things are, because they have, many of them have not been enforced by courts. Many of them haven't been tested under this law. You're telling us you don't know either. So at this point, no. And I think it would be hard to gauge, because no one's litigated on an as-applied basis. Are these, like, how do they work? Some of them actually as a practical matter could look like restitution. We don't know. So are you saying, good luck Third Circuit? Because nobody knows. I mean, really, is that where we are? No, absolutely not. They could do some make-whole relief. But they can't do consequential or compensatory damages. And go ahead, figure it out. Or do you have some kind of position, reasoned position, rooted in precedent or in statutory language, that will help us understand how you distinguish between those two things and then you guys win? Yes, so the rule-  We don't have a rooting interest. I'm just trying to figure out how you think you win, given those two concepts, which seem awfully murky. Sure, and just the legal rule we are asking the court to adopt is simply that the NLRA, like Title VII, is limited to equitable relief, that back pay is fine, because as the Supreme Court has recognized, it is an incident of equitable relief, and that is a very clear line. Now, in applying that line to different cases- Well, why do they say equitable relief? Why do they word it in terms of foreseeable consequences? Why did the board do so? I don't know. It's part of the Congress- Statute, tends to do that. But the statute is just saying, I mean, again, it's saying affirmative action and then talking about the purposes of the act, in addition to cease and desist. So that's sort of a two sides of equity. You have orders- The language will effectuate the purposes of the act. That's clearly more than just stuff they put in there to meet some kind of word quota. That's important stuff. Now, maybe you're saying, as will effectuate the purposes of the act, in tendency, modifies reinstatement and back pay, but that's not separative, because you don't need to modify reinstatement and back pay. Reinstatement and back pay, reinstatement and back pay. But they added, as will effectuate the purposes of the act, which seems to open the door to relief, which maybe it's legal, maybe it's equitable. In the context of the purpose for which it's awarded, it seems to me it's much more equitable than legal. Especially if the purpose is to restore status quo. But to be very clear, the modifier for purposes of the act is the affirmative action. So we fully agree with the idea that if the board were awarding affirmative action, which traditionally has been understood as a concept meaning equity, the board has discretion to figure out which of those equitable remedies will best serve the purposes of the act. Okay, so you're not going to back off the equitable legal distinction, that's fine. But I'm having a hard time pinning it down, Ms. Harris, on whether your position is it's just back pay and nothing else. Because earlier I thought you were acknowledging it could be something else. But in what you just said a minute or two ago, you said no, our position is back pay, equitable, and the implication of that is you go beyond that and you're out of the equitable range. If that's not your position and you can't tell us where the line is, then just say, I don't know. But if you can help us understand, if it's something beyond back pay, where's the line, then give us the line. Yes, and the line is, and sorry if this is confusing, but the line is anything else that is restitution, which is equitable. So if you had a situation where the defendant is holding, an employer is holding onto some money, like, I mean, hypothetically speaking, an employer had given the employer money for medical benefits, or the employer would have paid that out but for doing something. That's sort of an ill-gotten gain that in equitable terms may well be money, but it's considered equitable because it's restitution. Again, our dividing line is the same one the court has adopted. If you're clawing something back from the defendant that the defendant should not have kept, that's still equitable. So our position is not, our position is the same thing as I said before, which is affirmative relief, affirmative action means equitable remedies. Some equitable remedies involve money, but those involve restitution. They do not involve compensatory damages that the court is trying to do here. So, but then you kind of hit a wall here in terms of this particular case, because you said previously that you are not making an as-applied challenge to the other expenses beyond back pay here. So here, what we're challenging is the, I mean, the remedy that ordered here is what we're challenging, which is all direct or foreseeable pecuniary losses. And that's why we're challenging that. At this stage, we have to challenge at this stage. We can't just sort of wait and see what happens in compliance proceedings, because then we would have essentially forfeited our challenge, just as if the board had said, we're awarding compensatory and punitive damages and you don't have to wait and see if those actually happen. Now is the time to challenge that very broad remedy. So in effect, what the board said in Thrive, you're asking us as a general matter to take that on, even though not necessarily are you asking for it as applied to this particular case? Sorry, the thing that's been applied to the case is they adopted as one of the remedies in this case, an order that Starbucks pay all direct or foreseeable pecuniary losses. And they said for the purpose of making whole. I'm just reading from the text of what the board actually ordered. That's an as applied challenge, isn't it? Sounds like you're doing both. You're saying, sounds like you're saying that remedy's unfair to us, as it's being applied to us, among other things, because we got no notice, your due process argument, which is case specific here. So that sounds like an as applied. Yes. Am I wrong about that? You're correct about that. And if I misspoke, perhaps the distinction I'm drawing is simply, it's not sort of in this case, it's an as applied to Starbucks. It's just with respect to the hypothetical other expenses or something that the board on remand, if they needed to. So you're making, are you making a broader argument, which is, hey, it's unfair applied to us in this case, but it's just outside their power, period. They can't do it. They couldn't do it to anybody. I think the, again, we're making both of those arguments in the sense that Starbucks is saying for the due process purpose, that is absolutely. That could thrive straight up. Well, Rich, I'm sorry, did we get unclear on this, but we are saying like, this is a ruling as applied to Starbucks. So we are saying, the direct or foreseeable losses as applied to Starbucks, obviously unlawful and administrative challenge. That's sort of what you challenged here. But it does sound to me like you're simply saying, five is wrong. It's beyond what the board was authorized to do under 10C. We are saying that, but again, the consequence of this court's ruling will be applied to Starbucks. You're not vacating Thrive as to everyone in the universe. Well, we understand that Thrive, we can't reverse an order in Thrive. We're not confused about that. But your argument is, Thrive is wrongly decided. They don't have that power, period. Not applied to us, not applied to anybody. So yes, that is our statutory argument. Again, we obviously also have a narrower due process argument that is with respect to Starbucks. And so we are, just to be clear, we're making both of those arguments. Okay, gotcha. Thank you. We'll go ahead and hear from, we're gonna hear from Amicus here. Okay, thank you. Good morning, Your Honor. Go ahead. May it please the court. Michael Connealy on behalf of the amici. Okay. Your Honors, no court of appeals has yet addressed whether the Thrive remedy is lawful under the National Labor Relations Act. And we submit that this court should. The court circuit had some unkind things to say about it though, right? They did describe them as a novel, consequential damages like remedy, but they vacated. Theconian, I think was the word. Am I misremembering that? I don't recall that particular word, but I'm not gonna question Your Honor's recollection of it. It might be so. But they did vacate the Thrive decision on the underlying, I would say, liability grounds. And so, they didn't reach. And you're making your argument primarily on what, legislative history of the drafting of the act? We think that the drafting of the act does support our argument. And Congress considered a proposal that would have allowed the board to award damages in addition to affirmative action. You know, 50 years ago, that might have been a good argument. I can remember a case called Massachusetts Turnpike Authority versus Volpe or something where the Supreme Court said, we can't figure out what Congress intended by looking at the legislative history. So, I guess we gotta look at the statute. It's a fair point, Your Honor. Life has changed. It certainly has. That's not our only argument, of course. We also argue that the Supreme Court has construed language that it has described as expressly modeled on Section 10C in Title VII, as Your Honors were discussing earlier, and has held that that language does not encompass the ability to award consequential damages. We think that that reasoning equally applies to the board. And to frame the issue that way, again, you put the rabbit in the hat. You're saying what this is, is consequential damages, which is really the issue before us. Is it consequential damages? It might look like consequential damages, and I guess your argument is that if it looks like it, walks like it, and smells like it, it's consequential damages. But to the extent that it is in the nature of a civil award to compensate the employee and return the employee to the status quo, not punish Starbucks, it's not really in the nature of consequential damages, the key word being damages. It's a foreseeable consequence of the action, of termination. Your Honor, the board does disclaim the label consequential damages. That's certainly true. When they initially asked the world at large to comment on whether they should modify their make whole remedy, they did say, should we modify it to include consequential? And they ran away from that, which we'll be asking them about in a minute. But go ahead and answer, please, if you would, the question that by framing it the way you have, you're avoiding the question. The question is, is the kind of thing they're talking about, will it fit comfortably within the category of equitable relief? If you don't hang the consequential damages label on it, you accept their label of make whole remedy, are they okay here? Well, I think under jarcossy, and this was gonna be the other main argument I was going to present, the constitutional avoidance argument based on the recent Supreme Court decision. Jarcossy says, you look at the substance of the remedy. You don't get hung up over labels or how agencies or even statutes describe them. So I think you look at the substance of the remedies here, and the board is very clear that these remedies compensate affected employees. That is the language in Thrive itself. For compensate hinder, you're saying consequential. If we look at compensate in terms of make whole, does that change the analysis at all? And I think that your honors has great questions about the language in jarcossy that distinguishes between punishment and restoration of the status quo. Jarcossy was about civil penalties, and classifying those remedies is subject to a whole line of cases addressing penalties and civil sanctions. Tull versus United States, Austin versus United States, the cases that jarcossy discussed. There were a lot of cases that were addressed and there were no damages at issue in jarcossy. Like Ms. Harris, you're saying that's different. Exactly. Is there anything besides back pay that would be equitable? Your brief seems to say explicitly, no. It's back pay and nothing else. And maybe I misread it, but it seems pretty direct on that. Well, you certainly, I think it'd be really hard to say back pay is not statutorily authorized. It's expressly in the statute. We know you're agreeing with that, but I'm asking you this. Your brief seems to say, if I remember, that it's back pay and nothing else, because nothing else would fit within an equitable bucket that involves handing money over. It would all be compensatory or consequential damages. It couldn't be equitable. We agree with that. Do you reflect that that's your position? Yes, with respect to damages that are not restitutionary. Then how do you deal with felt stodge? How do you deal with the US Supreme Court saying, granted it's a long time ago, but saying the word including is not a word of limitation. You would, quote, be shriveling the statutory language to a mere example. How do you get around that? They seem to have rejected exactly the argument you're making. I think felt stodge did not address the constitutional concerns. And until jarcossy, the court had never held that an agency can violate the Seventh Amendment. Leave the Constitution out of it. This is just interpreting statutory text. The statutory text was in front of felt stodge court, and felt stodge court said, we can't read it that way. Why would we start reading it that way when it looks like felt stodge said, we won't read it that way? Well, I think if you take the Constitution out of it, I don't have an argument against all of those other forms of monetary relief that have been upheld by the Supreme Court and other cases. No one has gone as far in upholding relief like the board said should be awarded in Thrive. So that is a larger step beyond what came before. So what you're suggesting is that the Supreme Court and felt stodge, they were just kind of oblivious to the constitutional ramifications of saying what they said in that case. I don't think a party raised the constitutional argument in that case. And until jarcossy, the Supreme Court had never said that Congress cannot assign legal claims to an agency without violating the Seventh Amendment. Justice Sotomayor had a fair point that this was a very significant step that the majority took in jarcossy. And I think that if we take that as a given now, some of those earlier cases might need to be re-examined in light of potential constitutional concerns. Okay, thanks very much. Thank you. We appreciate the amicus briefing. Morning, may it please the court. Eric Weiss on behalf of the National Labor Relations Board. Given the opening argument, I can see the court's interest is mainly in the Thrive remedies. So I'll just pause and ask if there's any questions. Of course, so right. And thanks for that. Very insightful, very insightful. Unless there's any questions about the unfair labor practices, I'll move straight to that. I think we'll be spending our time on Thrive. So can you explain to me, the brief seems to say legal, equitable, schmequitable, who cares? Doesn't matter. We got the power. If that is your position, why is the board working so hard to run away from the words consequential and consequential and compensatory? Well, first I'd note, Your Honor, I think our argument's a little more nuanced. You've got a brief that says, in bold headlines, it doesn't matter. Well, so Starbucks is making both a statutory and constitutional argument, as Your Honor pointed out. And our argument, in response to the statutory argument, is that it doesn't matter in terms of 10C. 10C does not draw that distinction. No court opinion in the last 90 years has evaluated a board remedy based on a legal versus equitable statutory distinction. Well, what's the point of saying that, Mr. Weitz, if you're not asserting we've got that power? Well, we are asserting we have the power under Section 10C. Now, we're not- Award legal relief. Well, we're saying the distinctions are relevant. We're not denying that it's relevant. Wait, how can it be irrelevant unless, how can it be irrelevant unless what you're saying is, we've got the power to award this relief? No matter what you call it, we've got the power. Well, I would agree with that. We don't care whether you call it legal. We don't care whether you call it equitable. We've got the power. I would agree that that's the board's position, Your Honor. Now, at the same time- So you are asserting the power to award legal relief? Under Section 10C. We're not denying it's relevant to the Seventh Amendment. Are you conceding that the label that was just put on that is the correct label? Are you saying, yeah, we have the power to award this relief, and in this context, it's equitable and not legal? Which of those two things are you saying? Well, the remedy here is equal, equitable. That's sort of a third-order argument we're making,  Well, you better wrap it up a little bit, I think. Well, I'm trying to respond to the question, Your Honor. There's a statutory question of 10C. We're saying Congress did not intend to limit the board's authority to equitable relief. It is relevant to a Seventh Amendment inquiry, although I'll get into the public rights- But then you do end up with a Seventh Amendment issue, though, don't you? If you're saying that Congress didn't intend to limit it to equitable relief, then you've got a Seventh Amendment problem, and that's a biggie for you. I'm not sure why you're simply not saying that in this context, it's a foreseeable result, and it's a make-or-break remedy, and therefore, it's a classic equitable remedy. It's intended only to benefit the employees. It's not intended to punish Starbucks, and though it might merge a little bit into what is sometimes viewed as legal, the purpose here under jarkusy, and that's what we're looking at, is purely one which has historically been labeled as equitable. Stop putting legal on it. You're in a hole that I'm not sure you can dig yourself out of. Well, Your Honor, I fully agree with what you just said, and that is our argument, that it is equitable, but in terms of the actual law, I still have to push back, because I don't think the legal versus equitable distinction matters at all in this case, because the Seventh Amendment recognizes a public rights exception. Jones and Laughlin unequivocally answered this question and said the Seventh Amendment does not apply to the board's proceedings, because the board enforces public rights. That's the end of the inquiry. Okay, then assume, just for the sake of discussion, we thought you were right on that. That's certainly not a given, but just take the Seventh Amendment piece away for a moment. Strictly as a matter of statutory construction, if the board really thinks we've got it all, we got legal and we got equitable under 10C, answer for me why, if legal versus equitable is not a dividing line, why is the board running so hard away from the words consequential damages and compensatory damages? Explain that to me, because in Thrive itself, they say, we know we told the world when we asked for briefing, we wanted to hear about consequential damages, but oops, that was a slip of the tongue. We really didn't mean that. We meant make whole relief. Forget that whole consequential damages thing. Did they say the quiet part out loud and regret it, because legal versus equitable really matters? Why are they working that so hard? Your Honor, I would disagree that the board's running away with it. I think what they're doing is explaining, based on some of these arguments, that parties are- Let me just stop you for a minute, because I really want to get the answer to this question. If it doesn't matter, then why are they making the distinction? If it doesn't matter, why are they making the distinction? They're making a different distinction, Your Honor. They're not making a legal versus equitable. They're saying that using this term is confusing parties, including Starbucks in this case, and that they're presenting arguments that misapprehend the purpose and the nature of the board's remedies, and I can explain that. The board's remedies- Because what difference does it make if they call it consequential or not? Why do you care if they're confused? Why do you care if they're confused if what you're really saying is we have all the power, we can give consequential damages? Why don't they just say that? You know what? Yeah, it's consequential damages, and we can do it. So there. Why make the distinction at all? Because what the board awards, Your Honor, are not damages. One could characterize back pay as compensatory damages. Why not? Why are you making the distinction? Because, Your Honor, these are not damages for private parties. The purpose of the board's remedies are to advance the public policies of the act, to effectuate the policies of the act. The reason that it awards MACO relief is not to grant compensation to the private party. It's to restore the status quo and ensure that this individual is not coerced in the exercise of their statutory rights. How is what you just said any different from compensatory damages? How is that? What is the difference? Give me a reasoned distinction between a tort remedy which says, you know what? They should never have done that to you, and here's money to compensate you for expenses you had to bear because of the bad thing they did. Classic tort remedy. Yes. And what you just said, what is the difference? The distinction, Your Honor, and this exact argument was rejected by the Supreme Court in Virginia Electric when the parties there were saying, these are like tort remedies. We have these additional rights. And the Supreme Court explained, these may resemble compensation, but these are not torts. And one of the reasons, the main reasons, this is entirely within the discretion of the board. Unlike a tort remedy, a charging or an individual who's harmed by an unfair labor practice has no rights to make co-relief. Even when the board issues an order in their favor, they have no right to go into court. It's entirely within the board's discretion as the agency tasked with effectuating the act. What was at issue in Virginia Power? What were they trying to get? Virginia Electric was compensating dues that had been wrongly paid for a company union. So again, I would point that out as an example, I think undermines Starbuck's argument about back pay. But their pitch on that is, that is just like the back pay in the sense that it was something wrongly withheld. That's not a compensatory damage. It was clawing back something wrongly withheld. To get into that. It's under that bucket. And that's different from saying, you had to take the bus 10 times because you were out hunting for a job. So you're gonna get that money. That's a different thing. Well, to get into that, your honor, Starbucks in the argument tried to draw this restitutionary distinction. I'd point out, I'm not really sure that's in the briefing, but in any event, even back pay is not restitutionary. Back pay is not pay for an employee who performed work and they were not paid. It is compensating the employee because they were harmed by an unfair labor practice, even if the- Yeah, but it's in the statute and the Supreme Court. And we could have an interesting discussion about that. Like, why is that called equitable relief? Why can the Supreme Court call that equitable relief? And how does then the Supreme Court, in a rational way, distinguish that from other kinds of compensatory? But that's outside our remit. The Supreme Court has come down and sprinkled its Supreme Court water on it and said, back pay is equitable relief. Now, we're stuck with the question of, what else is equitable and what is legal and does it matter? On the one hand, you seem to be saying, it doesn't matter. Your brief says, it doesn't matter. And yet, in Thrive and here before us, you're wrestling and trying to say, it does matter. Or there's a distinction that we can do whatever we have to do to effectuate the purposes of the act. And if that's true, I am just puzzled by the briefing, by the language in Thrive, by the actions of the board, which appear to me, I grant you, I'm putting a kind of a pejorative spin on it by saying they're running away from it. So, discount that. But I'm just having a hard time understanding why it matters to you folks and why don't you just own it and say, it doesn't make a bit of difference. You can call it whatever you want. You can call me Bob. You can call me Roger. It's ours. It's ours. We get to do whatever we want because it's all for the purposes of the act. Well, respectfully, your honor, I think that would be an unwise litigation tactic. I mean, we're making an argument in the alternatives. Why is it an unwise litigation tactic? In the event that the court disagrees with our primary argument. Is it unwise because the board recognizes that Thrive represents a significant change, a real step out from where it's ever been before? Is that why it would be unwise to admit it? Certainly not, your honor. As we pointed on our brief, the board has awarded these types of remedies with this court and the Supreme Court's approval for 90 years. Well, never, ever, ever before has it said all foreseeable damages in every case. It's always been a case-by-case, fact-specific attempt to see whether you could actually fit this somehow close to back pay as a kind of a make-whole relief. It's just never, maybe it's better to ask it this way.  Go ahead and take on their Russell argument. Their argument that, look, Russell said you can't give medical damages. Heck, take on the Quick case where this court said, it didn't just say that it was okay for the board not to award attorney's fees. Maybe one could argue that the implication language was the board couldn't have awarded attorney's fees because it's not in the statute. And even if what you could argue that that was something that was consequential and the person ought to get it back, they can't do that because it's not in the statute. Take on those two arguments. Well, your honor, actually, we cited Quick, I think it's a case very much in our favor because this court drew a distinction there between litigation attorney's fees to an employee who has been harmed as an indirect result of an unfair labor practice, citing the Supreme Court's decision in Bill Johnson's and said that's make-whole relief, that's effectuating the policies of the act. What the court distinguished in that case was attorney's fees going to a third party, which is not making an employee whole and is not effectuating the policies of the act. So this court fully affirmed the practice of awarding make-whole relief for attorney's fees. And as for the Russell case, as we note in our brief, that case was about the question of does 10C supplant private tort claims? Did Congress intend to establish an exclusive means for private parties to have their injuries remedied? And the Supreme Court's analysis there is fully consistent with our point, which is that that's not what occurs in board proceedings. The board is acting in its sole discretion. Private parties do not have any right to make-whole relief from the board. When the board determines that it's necessary to effectuate the policies of the act, that's what it's doing. It's not resolving private rights. So that's the main thrust of that case. Yeah, it seems to me, you might be better off, and it's not for me to say how you should present this, but trying to get away from the legal equitable distinction and just rely upon what 10C says, and that is effectuating the policies of the act. And in some cases, effectuating the policies of the act and making the employee whole in terms of reinstating the status quo, arguably that's part of the policy of 10C, may well include the kind of relief that Thrive said the board could give and that Thrive gave. Although historically, that may not have been the case because courts simply may not have, and the LRB may not have looked at that part of the, I won't say damages, that part of the consequence of termination as addressing the policy of the act, call it legal, call it equitable, then you still have the Seventh Amendment issue, but then you do have the, as you said, the public right versus private right to get away from the Seventh Amendment problems you'd be under. Correct, Your Honor, and I'd also add for the Seventh Amendment point, our main argument is that this was decided in Jones and Laughlin, as clarified in Atlas, Rupinger, reaffirmed, and the Supreme Court has spoken under Agostini, this court doesn't need to examine further, but even if you move past that. Jones and Laughlin, I mean, it's a long time ago.  But it's a back pay act, right? Well, Your Honor, the Supreme Court unambiguously clarified in Atlas Rupinger, discussing Jones and Laughlin, that there were two separate holdings in Jones and Laughlin, both of which support us here, so I can get to both of them. First is the public rights exception, which is categorically what the board does is enforce public rights. So you don't need to get into this inquiry, but even if you do. So really, the whole constitutional avoidance thing is a smoke screen, because anything the board does is to vindicate public rights, so there's no Seventh Amendment issue, period. That's the board's position, Your Honor. But I would also stress. You could, why isn't that the, why wouldn't that be the case with some remote set of damage? I mean, how far out does that take you? Yeah, let me give you an example of that. Sure. Let's say either Nowakowska or Boussier saw a psychiatrist afterwards because they were really upset and were having some psychological issues. They go see a psychiatrist and they want to get paid for those medical expenses. And that would seem like that's a private right. Would it not? I think, Your Honor, we would say that's advancing the public policies of the act because you're undoing the consequence of the unfair labor practice. It looks like. I'm not admitting that the board would grant that, but you go with the hypothetical. We're not asking whether. I'm looking for a line of demarcation between what is a punishment versus medical remedies. And at some point you cross the line. And when is it? Well, Your Honor, I would stress that Thrive is very careful about the burden of proof that the board's general counsel has and the opportunity the employer has to rebut that this actually was caused by. The legal aspect of it doesn't go to the substance of it. He's talking about when you cross the line and your response goes to how you determine when someone has crossed the line. Well, I guess what I'm trying to answer, Your Honor, is I think the way that it's set up that it wouldn't cross the line because you need to have actual proof that a harm was incurred as a result of an unfair labor practice. But anything, like the board's position is. We've come full circle. Basically, whatever they say is going to be make whole as long as we say it's make whole. Absolutely not, Your Honor. There's a burden of proof that something needs to be incurred as a result of an unfair labor practice. It needs to have been direct or foreseeable. All of that is litigated. It'll be subject to judicial review. I'd also point out that in this proceeding, Starbucks is limited to a very broad facial attack. They have to say that the board can never award this type of remedy beyond back pay ever because no particular harms are at issue in this proceeding. We don't even know if they'll be alleged in this case. So, run that by me one more time, if you would, Mr. Weitz. Your argument is that they're not making an argument that they are, in particular, under the gun when they shouldn't be. They're making a more general statement. It's like a facial challenge to a statute. Correct. Because at this stage in the proceeding, because the board has bifurcated liability and compliance proceedings. Who else would make this challenge? In compliance, Your Honor. I'd like to hear Ms. Harris get up and say, we have to make this challenge now or we lose it. Because if we don't make it now, down the road they'll be saying, you forfeited it. Are you setting up a no-win situation for litigants on the other side? No, Your Honor. I think I'm just trying to answer Judge Ambrose's hypothetical that if the board in compliance were to award some so indirect harm that it's beyond the pale, that would be subject to judicial review in that compliance proceeding. There's no allegation of anything like that here, so the court doesn't need to resolve it. All that's at issue here is, assuming there are any harms at all, and they could be the most direct and obvious harms beyond back pay at all, is the board entitled to have that order enforced? And that's all that this court needs to concern itself with. Maybe you're looking at foreseeability almost in terms of approximate cause. In that something like the psychological ramifications of being terminated, you could argue that's certainly foreseeable. But it's so tenuous in terms of the causation that it's almost like it's not approximate cause. Maybe it's foreseeable, maybe it's not, but it's just too tenuous. And therefore, the board should not include that within the concept of, and we should not include that within the concept of foreseeability. It's certainly a possible consequence, possible result. It's not really foreseeable, therefore, five doesn't go that far. Correct, Your Honor. And I'd note that in Thrive itself, the board made clear that it's not awarding pain and suffering, for example. So I took Judge Ambrose hypothetical as being slightly different. Why not? So if it's truly foreseeable, why can't they give pain and suffering? Well, and this, they didn't reach their authority to potentially do that, but this particular remedy. But we're dealing with the authority. I understand. You can't say that's not before you because it is before us. You're right, they're making an argument like that. And you seem to be saying anything. Like if they've got pain and suffering and that's foreseeable, and that will make them whole, then the board has the right to give them that money. And that is foreseeable. Someone can lose their whole... Well, what I was trying to clarify, Your Honor, is that Thrive is limited to concrete pecuniary harms. Well, that's a... That's an issue in this case. Now, where's that coming from? Yeah. Pecuniary harms. Well, that's the thrust of the Thrive decision, Your Honor. That's what the remedy before the court in this case is. It's not... So wait, is that the line that you're drawing? Are you drawing a legal line for us? Are you... Because I don't want you... And I understand this is a challenge for everybody in this case. Because unless you're able to say to me, you know what, I can see with perfect clarity where these lines are. And if that's what you can say, then tell us. Otherwise, I'd say, this is pretty murky stuff. And I recognize that's a challenge for everybody that's in this room trying to figure it out. But you cannot... It's not helpful to us, Mr. Weitz, for you to say, well, in effect, that's not really before you, so don't worry about it. It is before us. Where is the line? Because the logic of your argument seems to embrace everything, including pain and suffering. Your Honor, I guess perhaps I'm misunderstanding the question, but I would reiterate that I don't think this court needs to decide the power to order remedies that aren't even an issue here. That's not really relevant to this proceeding. But we do have to be concerned with how our language will be interpreted. That's the problem that we have. If we write an opinion that opens up the door to pain and suffering, which is kind of consistent with the kind of argument that you're making, because it is foreseeable, maybe not the psychological counseling, but clearly if someone loses their home, that's very, very foreseeable. It's the classic example of someone being unemployed. If you've got a family, that could really create a downward spiral that someone can't climb out of very easily. And we have to, that's not before us here, but the language that we use to draft this opinion, no matter who wins this thing, is there. And we have to be very concerned about that when we draft an opinion. The point's well taken, Your Honor. I think my answer to that would be, if in a future case, the board were to award pain and suffering, I think the legal standard would be, does that effectuate the policies of the act? That is the well-established standard for the boards of medial authority, and frequently the Supreme Court has said, no, this exceeds the policies of the act, but that is the standard. So, you would like an opinion that says, well, we don't know where the line is, but we know this one doesn't cross it. Too quick to say at the time. Yeah, but that's what you're, but that really sounds like what you're asking. It sounds like what you're saying is, we got it all, but you don't have to worry about that. For your purposes today, all you have to say is, whatever else this means, it means that what's happening in this case, the damages that were at issue in this case, that the Starbucks is concerned about in terms of their job search costs and things like that. Wherever that line is, this doesn't cross it. That's just make whole. It's not really consequential, but don't worry, even if it were consequential, we'd have the power to do it anyway. And it's all public rights, so forget the Seventh Amendment. That's it in a messy nutshell, isn't it? Yes, Your Honor, and I don't think that's unreasonable given that this is an enforcement proceeding for an individual board order. I don't think the court needs to define the limits or draw lines about the board's authority at large beyond the remedy at issue here. And also make this one- Don't we have to make some logical case for what we're doing? Because that just sounds to me like punting. It just sounds like what you're saying is you don't really have to worry about the logic of this. All you have to say is, whatever else this is, this piece is make whole. And if it looks like the, run with Judge McKee's language a little bit, it may walk like a duck, it may quack like a duck, it may look like a duck, but it's not a duck. It's make whole, it's not consequential. And even if it were, who cares? I think what we're asking the court is to take a very clear, rational position, which is under 10C, there is not an equitable limitation. Under the Seventh Amendment, the public rights exception controls. Even if it doesn't, this is an equitable remedy because it's incidental to reinstatement. And as an additional meta point, obviously, I don't want to belabor it because perhaps the court disagrees, but I would stress to the court, the jurisdictional 10E argument. We're having these long conversations about difficult issue. None of this was ever presented to the board. The board has had no opportunity to weigh in on all of the stuff we're discussing. Wait, wait, the Thrive stuff was litigated and it was re-litigated. What do you mean none of this was in front of the board? It was presented, it was litigated, it's in both the decision and it's in the reconsideration decision. And in the reconsideration decision, they even said, we dealt with this already. So how can you say this is forfeited? Well, the legal versus equitable statutory argument. It's all in there. How can we decide the Thrive piece without wrestling with this? It's endemic in Thrive. You can't, it's like saying you can have an almond without breaking your neck. Well, respectfully, I would strongly disagree. This is a reinterpretation of the act that the board has never presented with. But as to the Seventh Amendment issue, the Seventh Amendment issue that was addressed was much narrower and very different. The dissenting board members in Thrive said that in particular applications, you could have a Seventh Amendment issue. We now have here a facial attack on the board's authority writ large to ever order any kind of non-equitable relief. That was never presented to the board. Okay, well, that's a narrower argument than the thing you just said, Mr. Weitz. But maybe I misheard you. It sounded to me like you were saying this whole statutory interpretation piece about Thrive is not in front of us. That's clearly in front of us. I would disagree, Your Honor. I don't think anywhere in the filings before the board, the board has ever been presented with this radical reinterpretation of Section 10c that the board's remedies are limited to equitable relief. In fact, in the motion for reconsideration here, Thrive, when they had different counsel, they have a new counsel on review, framed it as a question of damages. And they said back pay are the only damages that are allowed. They did not draw this distinction. Well, all right. That feels like you're gonna strain your hamstrings, sir, trying to make that forfeiture argument. But if you wanna rest on it, that's okay. Well, we're certainly not resting on it, Your Honor. Okay, do you have anything else? All right, thank you, Mr. Weitz. I appreciate your argument. We'll go ahead and hear from Ms. Harrison-Rebeau. Thank you, and may I? See if I can try to deal with the line of demarcation. You said that you were distinguishing between the employer's unlawful gain. That would be compensatory. And in this case, but the employee's losses, you're not really, the incidental losses here, you're not really challenging them here. Is that correct? Not quite. So the line we're drawing and the test we're drawing is the difference between when is a money payment equitable versus legal. So what you said at first, something that the defendant has unlawfully withheld, that's the classic definition that we cite in our supplement briefs and burdens in Great West and all the cases, that's restitution. And we say that's equitable, that's fine, that's one of the forms of affirmative action that this statute authorizes. We are instead saying if the measure is the plaintiff's loss, you're trying to compensate plaintiffs for loss in the world, the plaintiff paid childcare costs, the plaintiff paid credit care late fees, the plaintiff lost mortgage payments, the plaintiff had emotional distress damages, all the stuff that we just sort of heard about or was in the Thrive decision itself as examples. Those are classic compensatory damages and we know that because the Supreme Court- And so then when do employees' losses become quote legal, close quote, for purposes of allowing a Seventh Amendment right to come into play versus when they are not lawful or legal in nature? Again, that is the test I gave. So you could have a situation where the loss is something that the plaintiff lost but it's because the defendant withheld it. So let's say I'm an employee, I put money into my 401k, the employer kept it, wouldn't give it back, the plaintiff lost money but the employer also unlawfully kept it. And so the demarcation that the Supreme Court has used and all the cases use is that you're looking at who are you trying to compensate the victim of something, that's again, classic damages, or are you trying to take something back the defendant got that's equitable? Does QUIC help you or help them? I think QUIC helps us and here's why. I think QUIC is very consistent with the Supreme Court's Russell decision and the key thing I take from it is the idea that requests for quote, for complete relief that might find a receptive ear in a court of general jurisdiction are not for the board because nothing in the NLRA lets the NLRB order quote, complete relief for every unfair labor practice. I think that is a very similar recognition to what the Supreme Court said 70 years ago in Russell saying that Congress didn't establish a general scheme authorizing the board to award full compensatory damages for injuries caused by wrongful conduct. I think those are real problems for the NLRB's position today. And I think there are problems both in terms of the statutory language, just to respond to one of Judge McKee's points, I don't think that you can just say anything effectuating the policy that is make whole be okay. The language that Your Honor has been focusing on is an important limit on what the board can do. The board has the power to order affirmative action including reinstatement with or without back pay, but only if that affirmative action, whatever form it takes, is something that also effectuates the policies of the act. So it would be- I was gonna ask you about that. Use the policy of the act to put the employee where he or she would have been absent the improper termination. That's the board's position, and it could be one of the- Do you think- I think it could be, and here's how that's equitable. Well, that's the Supreme Court rules, right? I mean, that's the Supreme Court's language, not just the board's. Yes, and I think that is consistent with the nature of the equitable relief. Again, it's like an injunction. You are getting something that puts you back in your job. That's reinstatement. But you just put job into it. I deliberately left putting back, I could use relief in that job, because job makes it easy. I agree with you. That makes it easy, but I'm giving examples of other sorts of affirmative relief where the employee is being- Again, that's the classic distinct language in many ways about injunctions. Injunctions, the point is to restore the status quo. That is always the language that courts often use in describing injunctions, and they're the classic example of equitable relief. And again, just thinking about the war of rules going on here. I think our rule is clear. We have a very easy to- I mean, it's just what the courts have done in the countless contexts. The law versus equity distinction tracks this statute, tracks Title VII, tracks all the language I've talked about. The board is giving no limit. They're apparently saying whatever they think would effectuate the policy is good enough. On public rights, they're sort of taking a position that hasn't been the law, I think for at least 40 years, because the grand financier already- Why doesn't the assertion that this is public rights just rinse it all? Because that does seem to be their position, which is we're playing whack-a-mole with what is and isn't equitable and legal, and who cares? Because this is a public rights exception world, and they get to do whatever they want, because it's public rights. Because the Supreme Court rejected that position, not only in Jarchese, very, very specifically, where it said Atlas Roofing, the case the board just sort of relied on heavily, is contrary to the traditions of the court, and is arguably not good law. But even in grand financier, sort of 40 years ago, said that just because something's in a statute does not mean it's a Seventh Amendment-free land. The court in Jarchese very much said, it's only a public rights exception if you point to something historical, like immigration control, or control over foreign commerce or customs. Those are the limits the court mentioned. It did not mention Jones and Laughlin, and that's why Justice Sotomayor pointed out that she thought that even Jones and Laughlin, which again, we are not quarreling with in terms of back pay or reinstatement in any way, but she said, this isn't the nice, even that. And I think that is a sign of how out of step the board's position will be, and why going a step, a giant leap forward for compensatory damages in this particular case would be inappropriate, and now is the time to do it. We wouldn't be able to do this afterwards as the board is arguing. All right, well, listen, we thank counsel. We know this is a challenging case. We appreciate everybody's argument in the briefing that we've got, including from Amiki.